JUSTICE GRAY,
dissenting.
I respectfully dissent from the Court’s opinion for the same reason I recently dissented from part of the Court’s opinion in Larson v. CIGNA Ins. Co. (1996), [276 Mont. 283], 915 P.2d 863. It is my view that the Court again misapplies our stated standard for reviewing the Workers’ Compensation Court’s findings of fact and I cannot join the Court in doing so.
The Workers’ Compensation Court’s ultimate finding in this case is that Killoy has a reasonable prospect of physically performing regular employment and, therefore, that he did not meet his burden of proving permanent total disability by a preponderance of the evidence. Our standard in reviewing that finding is to determine whether substantial credible evidence supports it. Wunderlich v. Lumbermens Mut. Cas. Co. (1995), 270 Mont. 404, 408, 892 P.2d 563, 566. Our standard is not, as we have stated clearly and repeatedly, whether evidence supports a finding different from that made by the Workers’ Compensation Court. See, e.g., Wilson v. Liberty Mut. Fire Ins. (1995), 273 Mont. 313, 903 P.2d 785. It is my view that a proper application of our standard of review mandates a conclusion that substantial credible evidence supports the Workers’ Compensation Court’s finding.
Substantial evidence is “more than a mere scintilla of evidence but may be less than a preponderance of the evidence.” Taylor v. State Compensation Ins. Fund (1996), 275 Mont. 432, 437 913 P.2d 1242, 1245 (citation omitted). With regard to the Workers’ Compensation Court’s finding that Killoy has a reasonable prospect of physically performing regular employment, the record reflects the following. A certified rehabilitation counselor identified numerous jobs, generally available on both full- and part-time bases, as possibly suitable for Killoy. On that basis, she testified that Killoy has a reasonable opportunity for regular employment. Dr. Dewey opined that Killoy could safely attempt all but one of those jobs without risk to his *105 physical condition; he did not opine that Killoy’s pain would render him incapable of performing the jobs.
Killoy described his pain as constant, but testified that his “bad days” occur once or twice a week and that he seeks relief via hot showers and a heating pad. His pain is aggravated by both increased activity and remaining stationary for any length of time. Killoy spends a typical day reading, walking, watering his lawn and watching television. He is able to drive, mow his lawn, and participate in limited outdoor recreational activities.
Killoy does not believe he could perform any of the identified jobs which Dr. Dewey opined he could safely attempt because of his pain. He has neither worked nor attempted to work or find employment since his re-injury in February of 1994, and he testified that he does not want to work at a minimum wage job.
Based on Killoy’s testimony as to substantial difficulties in lifting his hands over his head, being required to stand for 85% of a work shift, lifting and carrying up to 15 pounds continuously and extensive physical activity, the Workers’ Compensation Court determined that Killoy was unable to perform three of the identified positions because they would increase his pain beyond what he could reasonably endure. Accepting Killoy’s complaints of pain, the court found that Killoy could perform the jobs of cashier or motel clerk on a full-time or part-time basis.
This record clearly contains substantial credible evidence supporting the Workers’ Compensation Court’s finding that Killoy has a reasonable prospect of physically performing regular employment. He is physically capable of standing, sitting, walking, driving a vehicle, mowing his lawn and engaging in recreational pursuits. Positions involving these, or similar, activities were identified. Nor was any medical opinion testimony presented that Killoy was incapable of performing these jobs because of either physical limitations or pain considerations.
The Court makes much of our conclusions in Robins and Jensen that pain must be considered as a factor in determining disability. It is clear, however, and even this Court does not suggest otherwise, that the Workers’ Compensation Court did consider the pain-related evidence of record. Nothing in Robins or Jensen supports this Court’s implicit conclusion regarding those cases that a claimant’s bare assertion of belief that he cannot tolerate the pain associated with working mandates a determination that he is entitled to permanent total disability benefits. Moreover, in those cases, the Workers’ Com *106 pensation Court found that the claimants were permanently totally disabled. What the Court fails to recognize here is that, in bothRobins and Jensen, we discharged our duty of determining whether substantial evidence supported the trial court’s findings of permanent total disability by recognizing the pain-related evidence which supported those findings. We are in the converse situation here and, as noted above, it is not our duty to determine whether evidence supports findings contrary to those made by the Workers’ Compensation Court. See Wilson, 903 P.2d at 788.
In addition, § 39-71-702(2), MCA (1993), requires that a “determination of permanent total disability must be supported by a preponderance of medical evidence.” The Court does not address this statutory requirement at all.
The record is clear, however, that Killoy offered no medical evidence that he did not have a reasonable prospect of physically performing regular employment. No doctor advanced a medical opinion that Killoy was physically incapable of performing regular employment. Indeed, Dr. Dewey approved five positions for Killoy to the extent that his performance of those positions would not harm, or risk, his physical condition. Dr. Dewey did not opine that Killoy’s pain rendered him unable to perform the positions and, therefore, the Court’s reliance on our ability to determine the weight of medical deposition testimony, under Caekaert, is totally misplaced; there is simply no medical evidence of pain too severe to permit the performance of regular employment. Dr. Dewey merely deferred to Killoy’s judgment on that question and Killoy testified that he believed his pain was too great to work through. Killoy’s subjective view of his pain does not constitute medical evidence.
Moreover, any suggestion that questions relating to the extent of a person’s pain, or the person’s ability to tolerate the pain while working, are not medical issues would be problematic with regard to the Court’s opinion in this case. For example, such a suggestion would appear to mean that the requirement contained in § 39-71-702(2), MCA (1993), that permanent total disability be established by a “preponderance of medical evidence” could never be met and, therefore, a claimant could never meet the statutory criteria and could never establish entitlement to permanent total disability benefits regardless of the extent of his or her pain and the clear impossibility of working while experiencing it. Such a result would be anathema to us all.
*107 In addition, it should be noted in this regard that the doctor in Robins testified to his opinion that the claimant could not return to his previous position because of the pain that accompanied working. Robins, 575 R2d at 71. If that doctor could give such a medical opinion, why cannot other doctors do so — either for or against the proposition? The Robins medical testimony would seem to belie any notion that pain is not a medical question. Yet the Court’s failure to address § 39-71-702(2), MCA (1993), in any fashion leaves these problems unresolved.
Finally, it is appropriate to comment briefly on portions of the special concurring opinion in this case. I do not disagree in any way with that opinion’s statement of this Court’s standard in reviewing medical deposition testimony. I agree entirely that our usual deference to the trial court’s ability to observe the demeanor and, thereby, assess the credibility of witnesses does not and cannot relate to medical evidence given by deposition. I also agree that that standard places “some additional responsibility on the reviewing court to independently analyze and evaluate” medical deposition evidence; I have not been reluctant to do so in other cases or in this case.
It appears, however, that Justice Trieweiler views the medical deposition standard as effectively repealing our overriding standard of determining whether substantial evidence supports the Workers’ Compensation Court’s findings and replacing it with a standard that allows us to choose bits and pieces of such evidence as might support findings contrary to those made by the trier of fact. I do not agree. As stated in one of the recent cases discussing the medical deposition standard which is cited in the special concurring opinion,
[t]his de novo standard of review does not extend to a review of the entirety of the case and the overall decision. Medical testimony must be harmonized with and considered in the context of the evidence as a whole. The substantial credible evidence standard controls the analysis of the record as a whole.
White v. Ford, Bacon & Davis Texas, Inc. (1992), 256 Mont. 9, 13, 843 P.2d 787, 789 (citation omitted). We have reiterated that standard on numerous occasions, most recently in Wilson on September 26, 1995. See Wilson, 903 P.2d at 787-88. Clearly, this limited de novo review standard does not allow, and was never intended to allow, this Court to merely substitute its judgment for that of the Workers’ Compensation Court on questions of fact.
Moreover, it is my view that the special concurring opinion mischaracterizes or overreads the portions of Drs. Knutson’s and Dewey’s *108 1994 reports it cites. Dr. Knutson states that “I suspect Mr. Killoy will be disabled from his laboring type of profession....” Similarly, Dr. Dewey opines that Killoy “could not return to his usual [heavy labor] occupation with Rhone Poulene [sic] but could return to a lighter occupation if that can be worked out. If not, I think he should be medically retired. ...” These reports support the uncontroverted and undisputed reality that Killoy cannot perform the duties of his earlier position as a heavy-duty mechanic for Rhone-Poulenc; they also support the proposition that Killoy cannot perform heavy labor jobs of any kind. They do not, however, support or mandate a determination that Killoy “does not have a reasonable prospect of physically performing regular employment” as required by the statutory definition of permanent total disability. See § 39-71-116(19), MCA (1993).
Under the Court’s decision in this case, a claimant such as Killoy can establish entitlement to permanent total disability benefits, as a matter of law, on the sole basis of his subjective assertion that he cannot tolerate working at any job because of the pain he experiences. Physical incapacity to perform is not required; a good-faith effort— indeed, any effort — is not required; a supporting medical opinion is not required. I cannot agree with the Court’s displacement of the statutory definition of permanent total disability, the claimant’s burden of proof, the proper role of the Workers’ Compensation Court as the trier of fact and our standards in reviewing that court’s findings.
I dissent.
CHIEF JUSTICE TURNAGE and JUSTICE ERDMANN join in the foregoing dissent of JUSTICE GRAY.